UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X          <u>For Online Publication Only</u>
RYSZARD HEJMEJ, BOZENA HEJMEJ,
and TIBOR FARKAS,

                                                    Plaintiffs,          **<u>ORDER</u>**
                                                                         17-CV-782 (JMA) (SIL)
                    -against-

                                                                         **FILED**
                                                                         **CLERK**
PECONIC BAY MEDICAL CENTER and
NORTHWELL HEALTH,                                                        11:07 am, Sep 29, 2022

                                                                         **U.S. DISTRICT COURT**
                                                                         **EASTERN DISTRICT OF NEW YORK**
                                                    Defendants.          **LONG ISLAND OFFICE**
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

  In this civil rights action, Plaintiffs Ryszard Hejmej, Bozena Hejmej, and Tibor Farkas—all of whom are deaf—allege that Defendants Peconic Bay Medical Center and Northwell Health (together, the "Hospital") discriminated against them by failing to provide reasonable accommodations for their disability when they sought medical treatment at the Hospital. They assert claims under (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 <u>et seq.</u>; (2) Section 504 of the Rehabilitation Act ("Rehabilitation Act" or "RA"), 29 U.S.C. §§ 794 <u>et seq.</u>; (3) Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. §§ 18116 <u>et seq.</u>; and (4) various sections of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 <u>et seq.</u>  (<u>See</u> Am. Compl., ECF No. 41.)[1]

  After the parties filed cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (ECF Nos. 78, 83), the Court referred the parties' motions to Magistrate Judge Steven I. Locke for a report and recommendation ("R&R").  (Electronic Order dated Apr. 29, 2022.)  The parties subsequently submitted letter briefs addressing the impact of the Supreme

---

[1] Plaintiffs assert their federal claims as patients and also as "companions" to one another on various Hospital visits.  <u>See</u> 28 C.F.R. § 36.303(c)(1).

Court's intervening decision in <u>Cummings v. Premier Rehab Keller, P.L.L.C.</u>, 142 S. Ct. 1562 (2022).  (ECF Nos. 86–87, 89.)  Now before the Court are Plaintiffs' objections to Magistrate Judge Locke's R&R, which recommends that the Court (1) grant Defendants' motion in its entirety; (2) deny Plaintiffs' motion in its entirety; (3) dismiss Plaintiffs' ADA, Rehabilitation Act, and ACA claims with prejudice; and (4) decline to exercise supplemental jurisdiction over Plaintiffs' NYSHRL claims and dismiss them without prejudice.  (ECF No. 90.)

Plaintiffs timely objected to the R&R, and Defendants responded to Plaintiffs' objections. (Pls.' Obj, ECF No. 90; Defs.' Resp., ECF No. 93.)  After conducting a review of the full record (including the motion papers, R&R, and objections) and applicable law, the Court adopts Magistrate Judge Locke's R&R in part as the opinion of the Court.

In reviewing a magistrate judge's report and recommendation, a court must "make a <u>de novo</u> determination of those portions of the report or . . . recommendations to which objection[s] [are] made."  28 U.S.C. § 636(b)(1)(C).  <u>See also</u> <u>United States ex rel. Coyne v. Amgen, Inc.</u>, 243 F. Supp. 3d 295, 297 (E.D.N.Y. 2017), <u>aff'd sub nom.</u> <u>Coyne v. Amgen, Inc.</u>, 717 F. App'x 26 (2d Cir. 2017).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Those portions of a report and recommendation to which there is no specific reasoned objection are reviewed for clear error.  <u>See</u> <u>Pall Corp. v. Entegris, Inc.</u>, 249 F.R.D. 48, 51 (E.D.N.Y. 2008).

The Court finds no clear error in the portions of Magistrate Judge Locke's R&R to which there are no objections.[2]  Next, the Court turns to the portions of the R&R to which Plaintiffs have objected.  The Court has undertaken a <u>de novo</u> review of the full record and applicable law, and the Court agrees with Magistrate Judge Locke's recommendations, except with respect to the

---

[2]      Plaintiffs do not object to Magistrate Judge Locke's recommendation that Plaintiffs' ADA claims should be dismissed. (R&R at 15–16; <u>see also</u> Pls.' Obj. at 1 n.2.)  Accordingly, for the reasons set forth in the R&R, Plaintiffs' ADA claims are dismissed with prejudice.

recommendation that Plaintiffs cannot seek nominal damages on their Rehabilitation Act and ACA claims.[3]  (R&R at 16–19, 20–21.)  Instead, the Court adopts the reasoning set forth in Fantasia v. Montefiore New Rochelle, No. 19-CV-11054, 2022 U.S. Dist. LEXIS 107935, at *11–12 (S.D.N.Y. June 16, 2022), and concludes that Plaintiffs may seek nominal damages for Defendants' alleged violations of the Rehabilitation Act and ACA.[4]  Accordingly, Plaintiffs' Rehabilitation Act and ACA claims are not dismissed as moot.

Turning to the merits, the Court finds that disputed issues of material fact preclude summary judgment in favor of either party.

**Legal Standard.**   Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citing Celotex, 477 U.S. 322–23).  "An issue

---

[3]     The Court agrees with Plaintiffs that expectation damages may be available as a remedy for violations of the Rehabilitation Act and the ACA.  (See Pls.' Obj. at 20 (citing Fantasia v. Montefiore New Rochelle, No. 19-CV-11054, 2022 U.S. Dist. LEXIS 107935 (S.D.N.Y. June 16, 2022) and Montgomery v. Dist. of Columbia, No. 18-CV-1928, 2022 WL 1618741 (D.D.C. May 23, 2022)).)  Plaintiffs seek expectation damages here based on their allegation that "Defendants and their physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing all Plaintiffs greater levels of . . . indignity . . . than a hearing person or companion would be expected to experience."  (Id. at 22 (citing Am. Compl. ¶ 48).)  However, "this is clearly a rebranding of emotional-distress damages, which are precluded by Cummings," Fantasia, 2022 U.S. Dist. LEXIS 107935, at *7–8, and "plaintiff[s] do[] not explain how a factfinder would quantify this loss with reasonable certainty." Id.  As a result, they may not seek expectation damages here.

[4]     The parties do not dispute that even after Cummings, Plaintiffs may seek compensatory damages (including damages for alleged emotional distress) under the NYSHRL.  See Fantasia, 2022 U.S. Dist. LEXIS 107935, at *4–12 (applying Cummings to claims under RA and ACA, but not NYSHRL).

of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "In determining whether the moving party is entitled to judgment as a matter of law, the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (citing Anderson, 477 U.S. 242 at 255). "The same standard applies where, as here, the parties filed cross-motions for summary judgment[.]" Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)).

**Rehabilitation Act Claims.**   Section 504 of the RA prohibits a program or activity receiving federal funds from excluding or discriminating against persons based on disability. See 29 U.S.C. § 794(a). To establish a prima facie claim under Section 504 of the RA, Plaintiffs must establish that: (1) they are "handicapped person[s]" as defined by the RA; (2) they are "otherwise qualified to participate in the offered activity or benefit"; (3) they were "excluded from such participation solely by reason of [their] handicap"; and (4) the program receives federal funds. See Biondo v. Kaledia Health, 935 F.3d 68, 73 (2d Cir. 2019) (citing Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009)). The parties dispute only the third element: whether Defendants discriminated against Plaintiffs because of their disability.

Ultimately, "[w]hile the RA 'does not ensure equal medical treatment,' it does require 'equal access to and equal participation in a patient's own treatment.'" Biondo, 935 F.3d at 73 (quoting Loeffler, 582 F.3d at 275). To that end, the RA's implementing regulations require that "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing

4

emergency health care." 45 C.F.R. § 84.52(c). Accordingly, a hospital must "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." Fantasia, 2022 WL 294078, at *5 (quoting 45 C.F.R. § 84.52(d)(1)). Appropriate auxiliary aids "may include interpreters, note takers, and 'written materials.'" Luckey v. St. Luke's Cornwall Hosp., No. 20-CV-1161, 2021 WL 4124840, at *5 (S.D.N.Y. Sept. 9, 2021) (citing 28 C.F.R. § 36.303).

"To determine whether an auxiliary aid was 'necessary' or whether the auxiliary aid provided was 'appropriate' for a hospital patient, courts have looked to whether that patient could effectively communicate with hospital staff without any aid or with the aid provided, respectively." Fantasia, 2022 WL 294078, at *5 (citing Berry-Mayes v. N.Y. Health & Hosps. Corp., No. 14-CV-9891, 2016 WL 8461191, at *8–9 (S.D.N.Y. Sept. 16, 2016), aff'd, 712 F. App'x 111 (2d Cir. 2018) and Viera v. City of New York, No. 15-CV-5430, 2017 WL 3130332, at *15–16 (S.D.N.Y. July 21, 2017)). Thus, "the proper inquiry is whether the auxiliary aid that a hospital provided to its hearing-impaired patient gave that patient an equal opportunity to benefit from the hospital's treatment." Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 343 (11th Cir. 2012). See also 45 C.F.R. § 84.4(b)(2) (explaining that an auxiliary aid is "not required to produce the identical result . . . for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."). "Whether a particular aid is effective in affording a patient an equal opportunity to benefit from medical treatment largely depends on context, including, principally, the nature, significance, and

complexity of the treatment." <u>Liese</u>, 701 F.3d at 343.[5]  "Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment." <u>Chisolm v. McManimon</u>, 275 F.3d 315, 327 (3d Cir. 2001).

The parties argue that summary judgment on Plaintiffs' RA claim is appropriate because there is no genuine dispute as to whether Plaintiffs were able to communicate effectively with Hospital staff.  The Court disagrees.

Defendants contend that "[t]he record is clear that Plaintiffs were able to effectively communicate using [video remote interpreting], lip reading, and written notes." (Defs.' Mem. at 3, ECF No. 78-51.)  They argue that it is undisputed that Plaintiffs can communicate with family members and colleagues through written notes, and—in the case of Bozena and Ryszard Hejmej— through speech and lip reading, too.  (<u>Id.</u> at 5–7.)  Defendants also submit evidence that during Plaintiffs' Hospital visits, when an American Sign Language ("ASL") interpreter was not present and video remote interpreting ("VRI") was not used, Plaintiffs communicated with medical staff in writing.  (<u>See, e.g.</u>, Defs.' 56.1 ¶¶ 95–98, 132, 164, ECF No. 78-50.)  According to Defendants, this evidence establishes that "during Plaintiffs' visits to the Hospital, they were, in fact, able to effectively communicate with the Hospital's physicians and clinical staff." (Defs.' Mem. at 10.)

At this stage, however, Defendants' argument is unavailing.  First, courts consistently recognize that "[p]laintiffs' ability to communicate with family, friends, and colleagues day-to-day about routine matters does not equate to an ability to communicate with Hospital staff concerning complex medical information."  <u>Van Vorst v. Lutheran Healthcare</u>, No. 15-CV-01667, at 4

---

[5]     Plaintiffs argue that they can also prevail on their RA claims by showing that they were "otherwise treated differently" due to their disability as compared to other patients. (Pls.' Mem. at 13, ECF No. 83-47.)  The Court disagrees.  As Defendants point out, that is not the correct inquiry with respect to their failure-to-accommodate claims. (Defs.' Opp'n at 3–4, ECF No. 84.)  Instead, the critical question at summary judgment is whether "a reasonable jury could find, given the circumstances, that the failure to provide [ASL interpretation] deprived [Plaintiffs] of an 'equal opportunity to benefit from the hospital's services[.]'" <u>Biondo</u>, 935 F.3d at 74 (quoting 45 C.F.R. § 84.52(d)(1)).

(E.D.N.Y. Sept. 26, 2018).  Put simply, "evidence that the medical staff could ascertain a patient's basic symptoms and convey treatment instructions is not enough . . . to conclude, as a matter of law, that a disabled patient's level of informational exchange was equal to that of non-disabled patients as required by the ADA and RA."  Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 839 (11th Cir. 2017).  Second, Plaintiffs submit evidence that, viewed in the light most favorable to them, suggests that they have limited English proficiency and that at times they had difficulty communicating with Hospital staff without ASL interpretation.  For example, Bozena Hejmej testified at her deposition that she can only read and write in English "to limited extent," (B. Hejmej Dep. Tr. 19:8–10, ECF No. 83-8) and that during one visit to the Hospital, she was "really overwhelmed" because she "couldn't understand anything the doctor said."  (B. Hejmej Dep. Tr. 52:7–9, ECF No. 82-5.)  Likewise, in reflecting on his experiences as a patient and companion at the Hospital, Ryszard Hejmej testified that he "was nervous because [he] didn't have an interpreter" and he "didn't know what was going on."  (R. Hejmej Dep. Tr. 85:11–14, ECF No. 83-7.)  And although the record contains an extensive exchange of written notes between Tibor Farkas and Hospital staff during his April-May 2018 visit—which reflect a back-and-forth suggesting that he could communicate effectively through writing—the same notes also show that he wrote "NEED interpreter please it is important to have."  (Pls.' Ex. 45 at 60, ECF No. 79-46.)  Plaintiffs also put forward evidence that the Hospital's VRI devices frequently malfunctioned.  (Pls.' 56.1 Response ¶¶ 108, 132, 152, ECF No. 79-47.)

Although Defendants argue that the evidence in the record shows that Hospital staff were able to document Plaintiffs' symptoms and effectively communicate other medical information, this "at most shows that [Plaintiffs'] contention of ineffective communication is disputed by Defendants—but a disputed material fact goes to a jury." Silva, 856 F.3d at 839.  And to the extent that Defendants argue that Plaintiffs' deposition testimony is "self-serving," (Defs.' Reply at 5),

the Court notes that "witness credibility must be decided by the fact finder, not by a court on summary judgment." Fantasia, 2022 WL 294078, at *6 (denying summary judgment on RA claim and noting that "[d]efendant may well be correct that a finder of fact will find [plaintiff's] testimony not credible") (citing Wright v. N.Y.S. Dep't of Corr., 831 F.3d 64, 74–75 (2d Cir. 2016)). Because the Court concludes that on this record, "a reasonable jury could find, given the circumstances, that the failure to provide [an ASL interpreter] deprived [Plaintiffs] of an equal opportunity to benefit from the hospital's services," Biondo, 935 F.3d at 74, summary judgment on their Rehabilitation Act claims is denied.[6]

**ACA Claims.**  Plaintiffs also bring claims under Section 1557 of the ACA, which provides that "an individual shall not . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).  "[B]ecause Section 1557 explicitly incorporates Section 504 of the Rehabilitation Act, the Court need not conduct an independent analysis of Plaintiff[s'] ACA claim[s]." Vega-Ruiz v. Montefiore Med. Ctr., No. 17-CV-1804, 2019 WL 3080906, at *3 n.3 (S.D.N.Y. July 15, 2019) (citations omitted).  As discussed above, there is a genuine factual dispute as to whether Plaintiffs were able to communicate effectively without ASL interpretation during their visits to the Hospital.  Accordingly, summary judgment on Plaintiffs' ACA claims is denied.[7]

**NYSHRL Claims.**  NYSHRL claims are construed to be "co-extensive" with claims brought under the Rehabilitation Act.  Loeffler, 582 F.3d at 277.  Thus, "for the same reasons summary judgment is inappropriate on [P]laintiff[s'] Section 504 claim[s], summary judgment is

---

[6]    For the same reasons that summary judgment is denied on Plaintiffs' RA claims as patients, it is denied to the extent that they assert claims as "companions."

[7]    As a result, the Court need not determine at this time to what extent the "primary consideration" rule, 28 C.F.R. § 35.160(b)(2), applies to Plaintiffs' claims.  (See Pls.' Mem. at 20; Defs.' Opp'n at 15–16.)

inappropriate on [their] NYSHRL claim[s]." <u>Fantasia</u>, 2022 WL 294078, at *10. Accordingly, the parties' cross-motions for summary judgment on Plaintiffs' NYSHRL claims are denied.[8]

      For the reasons stated above, the Court affirms and adopts the well-reasoned R&R in part as the opinion of the Court. Additionally, the parties' cross-motions for summary judgment are DENIED.

**SO ORDERED.**

Dated:  September 29, 2022
Central Islip, New York

                                  /s/   (JMA)
                               JOAN M. AZRACK
                               UNITED STATES DISTRICT JUDGE

---

[8]     The parties dispute whether Plaintiffs must demonstrate that Defendants were "deliberately indifferent" to the alleged violations of law in order to recover nominal damages under the RA and ACA, and compensatory damages under the NYSHRL. (<u>See</u> Defs.' Obj. at 7–10; Pls.' Obj. at 8–9; Defs.' Mem. at 19–20; Pls.' Opp'n at 19–20, ECF No. 79.) The Court declines to reach this question at this time because it is genuinely disputed whether members of the Hospital's staff "had actual knowledge of discrimination against the [plaintiffs], had authority to correct the discrimination, and failed to respond adequately." <u>Biondo</u>, 935 F.3d at 74 (citing <u>Loeffler</u>, 582 F.3d at 276). (<u>See</u> Defs.' Mem. at 20–23; Pls.' Opp'n at 20–24.)