```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
RYSZARD HEJMEJ, BOZENA HEJMEJ,
and TIBOR FARKAS,
```

For Online Publication Only

Plaintiffs,

**ORDER**
17-CV-782 (JMA) (SIL)

-against-

PECONIC BAY MEDICAL CENTER and
NORTHWELL HEALTH,

FILED
CLERK
2:16 pm, Jul 06, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

Defendants.
----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

On September 29, 2022, the Court granted in part and denied in part the parties' cross-motions for summary judgment. (ECF No. 94, "Order".) Specifically, the Court (i) granted summary judgment for Defendants on Plaintiffs' claims under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq.; and (ii) denied summary judgment on Plaintiffs' claims under Section 504 of the Rehabilitation Act ("Rehabilitation Act" or "RA"), 29 U.S.C. §§ 794 et seq., Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. §§ 18116 et seq., and various sections of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq. Plaintiffs now move for reconsideration of the Order. For the following reasons, their motion is DENIED.

The Court assumes familiarity with the Order, as well as the facts and procedural history of this case.

## I.   LEGAL STANDARD

The standard for granting a motion for reconsideration is "strict," and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "This strict standard is intended to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Kurland v. Fireman's Fund Ins. Co., No. 21-CV-6440, 2022 U.S. Dist. LEXIS 225400, at *2 (E.D.N.Y. Dec. 14, 2022) (quoting Great Am. Ins. Co. v. Zelik, 439 F. Supp. 3d 284, 286 (S.D.N.Y. 2020) (internal quotation marks and citations omitted)). Accordingly, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257. Nor may a party moving for reconsideration "present new or alternative theories that they failed to set forth in connection with the underlying motion." Kurland, 2022 U.S. Dist. LEXIS 225400, at *3 (quoting Intelligent Digital Sys., LLC v. Beazley Ins. Co., 962 F. Supp. 2d 451, 457 (E.D.N.Y. 2013)). Instead, the "major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound discretion of the district court.'" U.S. Bank Nat'l Ass'n v. Triazz Asset Mgmt. LLC, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009)).

## II.  DISCUSSION

Plaintiffs advance three arguments in support of their motion for reconsideration of the Order. None satisfies the "strict" standard for reconsideration. Shrader, 70 F.3d at 257.

### A.  The "Primary Consideration" Standard and Plaintiffs' ACA Claims

First, Plaintiffs argue that the Court erred by failing to conduct an independent analysis of their ACA claims. They contend, citing Vega-Ruiz v. Northwell Health, 992 F.3d 61 (2d Cir. 2021), that the Court "must consider the extent to which the [ACA's] 'primary consideration' rule

applies . . . and after doing so, partial summary judgment would be warranted for Plaintiffs." (Pls.' Recons. Mem. at 1, ECF No. 95-1.) However, Plaintiffs misunderstand the Order and have provided no basis for reconsideration.

Under the ACA's "primary consideration" rule, "an entity <u>must</u> give 'primary consideration' to the kind of aid requested by a person with a communication disability, though the 'type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual.'" <u>Vega-Ruiz</u>, 992 F.3d at 64–65 (quoting 28 C.F.R. § 35.160(b)(2)). Where the rule applies, an "entity must 'honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden.'" <u>Id.</u> at 65 (quoting U.S. Dep't of Justice, Civil Rights Div., Disability Rights Section, ADA Requirements, Effective Communication, https://www.ada.gov/effective-comm.pdf (Jan. 2014), at 6).

After denying summary judgment on Plaintiffs' Rehabilitation Act claims, the Court likewise denied summary judgment on their ACA claims because (i) the ACA "explicitly incorporates Section 504 of the Rehabilitation Act," (Order at 8), <u>and</u> (ii) the Court had already determined, with respect to their Rehabilitation Act claims, that "there is a genuine factual dispute as to whether Plaintiffs were able to communicate effectively without ASL interpretation during their visits to the Hospital." (<u>Id.</u>) Assuming Plaintiffs are correct that Defendants failed to "honor [Plaintiffs'] choice" regarding their preference for ASL interpreters, <u>Vega-Ruiz</u>, 992 F.3d at 65, the focus of the primary consideration analysis then shifts to whether Defendants can demonstrate that "another equally effective means of communication [was] available." <u>Id.</u> Because the Court determined that there are factual disputes regarding whether effective communication occurred, applying the primary consideration rule as requested by Plaintiffs still would not result in summary

judgment in their favor. Accordingly, the Court did not—and does not at this time—need to decide which of Plaintiffs' visits to the Hospital are covered by the rule. Because Plaintiffs' motion "seeks solely to relitigate an issue already decided," Shrader, 70 F.3d at 257, reconsideration is denied.

The parties will have an opportunity to address the application of the primary consideration rule to Plaintiffs' ACA claims via motions in limine or their proposed jury instructions.

### B. The Required Showing to Recover Damages

Second, Plaintiffs assert that the Court must decide whether they are required to show Defendants' deliberate indifference in order to recover nominal damages under the Rehabilitation Act and ACA, and compensatory damages under the NYSHRL. (Pls.' Recons. Mem. at 6–7.) The Court declined to reach this issue in the Order because factual disputes precluded summary judgment for either party on these claims. Again, Plaintiffs' motion "seeks solely to relitigate an issue already decided," Shrader, 70 F.3d at 257, and therefore reconsideration is denied.

The parties will have an opportunity to address this issue prior to trial via motions in limine or their proposed jury instructions.

### C. Plaintiffs' "Treated Differently" Theory

Third, and finally, Plaintiffs urge the Court to reconsider its rejection of their argument that they can prevail by showing that they were "otherwise treated differently" due to their disability as compared to other patients. (Pls.' Recons. Mem. at 7.) They argue that the Court "overlooked binding precedent that Plaintiffs may base a 'discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" (Id. (quoting Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016) (emphasis added).)

As an initial matter, Plaintiffs did not cite Davis in their opening summary judgment brief or in their opposition to Defendants' motion—they cited Davis in their reply brief only. (See Pls.' Mem., ECF No. 83-47; Pls.' Opp'n, ECF No. 79; Pls.' Reply at 11, ECF No. 85.) This alone is a

4

sufficient reason to deny their motion. See Philadelphia Indem. Ins. Co. v. Yeshivat Beth Hillel of Krasna, Inc., No. 16-CV-5096, 2019 WL 3500944, at *2 (E.D.N.Y. July 31, 2019) (a court "need not consider" a movant's arguments in support of reconsideration where movant "raised them for the first time in its reply brief[]") (citations omitted). More importantly, however, Plaintiffs also waited until their reply brief to actually articulate their specific theories of differential treatment—based on comparisons to Limited-English-Proficiency ("LEP") and English-speaking patients—and to cite evidence in the record to support those theories. (See Pls.' Reply at 12–13.) This, too, warrants denial of their motion for reconsideration.

Even if the Court were to reconsider its rejection of Plaintiffs' position, Plaintiffs' arguments still fall short.

First, Plaintiffs cited no evidence that supports their contention that they were treated less well than LEP patients. They pointed to Defendants' policy that "interpreter services 'should be offered by the staff throughout [the] entire hospital stay' even '[i]f a patient, family member, associate or companion declines services' at another point," and that contrary to that policy, Defendants' staff "would only provide interpreters [to deaf patients] upon request or if they deemed it necessary." (Pls.' Reply at 12 (quoting PX 3 at Defendants0000220).) However, Plaintiffs failed to cite any evidence that the policy was implemented in a discriminatory manner—i.e., that LEP patients received interpreters while Plaintiffs and other non-hearing patients did not.

Second, Plaintiffs are not correct that they can prevail merely by showing that they were "otherwise treated differently." (Order at 6 n.5.) The parties agree that the regulation applicable to Plaintiffs' claims is 45 C.F.R. § 84.52, which provides, in relevant part, that a hospital may not "on the basis of handicap . . . [p]rovide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons." Id. § 84.52(a)(4). To avoid "limiting the participation of qualified handicapped persons," a hospital must "provide appropriate

5

auxiliary aids to persons with impaired sensory, manual, or speaking skills, where <u>necessary</u> to afford such persons an equal opportunity to benefit from the service in question." <u>Id.</u> § 84.52(d)(1) (emphases added). And, as the Court explained in the Order—citing <u>Fantasia v. Montefiore New Rochelle</u>, No. 19-CV-11054, 2022 WL 294078 (S.D.N.Y. Feb. 1, 2022), a case in which the plaintiff pursued a "treated differently" theory—"[t]o determine whether an auxiliary aid was 'necessary' or whether the auxiliary aid provided was 'appropriate' for a hospital patient, courts have looked to whether that patient could effectively communicate with hospital staff without any aid or with the aid provided, respectively." (Order at 5 (citing <u>Fantasia</u>, 2022 WL 294078, at *5).)

Thus, regardless of whether Plaintiffs frame their claims based on a failure-to-accommodate or a disparate treatment theory—or both—the inquiry remains the same: "whether [Plaintiffs] could effectively communicate with hospital staff without any aid or with the aid provided, respectively." (<u>Id.</u>) Because Plaintiffs have not raised any "controlling decisions . . . that might reasonably be expected to alter the conclusion reached by the court," <u>Shrader</u>, 70 F.3d at 257, reconsideration is denied.

### III.  CONCLUSION

For the reasons stated above, Plaintiffs' motion for reconsideration is DENIED.

**SO ORDERED.**

Dated:  July 6, 2023
       Central Islip, New York

                                                           /s/   (JMA)
                                           JOAN M. AZRACK
                                           UNITED STATES DISTRICT JUDGE